IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANNY ACEVEDO,<br><br>                      Plaintiff,<br><br>vs.<br><br>RALPH'S GROCERY COMPANY<br>D/B/A FOOD 4 LESS MIDWEST,<br><br>                      Defendant. | Case No. 22-CV-3097<br><br>Jury Trial Demanded |

**COMPLAINT AND JURY DEMAND**

**I.      PRELIMINARY STATEMENT**

1.      This is an action for an award of damages, attorney's fees, and other relief on behalf of Plaintiff, Danny Acevedo ("Plaintiff"), a former employee of Defendant, Ralph's Grocery Store d/b/a Food 4 Less Midwest ("Defendant"), who has been harmed by the Defendant's discriminatory employment practices.

2.      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981(a), ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA") and the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.  (the "IDHR").

**II.      JURISDICTION AND VENUE**

3.      The jurisdiction of this court is invoked, and venue is proper in this district pursuant to 28 U.S.C. §§1331 and 1391 as Plaintiff's claims are substantively based on Title VII and ADA.

1

894053

4. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff's claims arising under the IDHA.

5. All conditions precedent to the institution of this suit have been fulfilled and Plaintiff has satisfied all jurisdictional prerequisites to the maintenance of this action. On March 31, 2022, a Notice of Right to Sue was issued by the Illinois Department of Human Rights and this action has been filed within ninety (90) days of receipt of said notice.

### III. PARTIES

6. Plaintiff, Danny Acevedo, is of Puerto Rican origin and citizen of the State of Illinois, residing in DuPage County, Illinois.

7. Defendant, Ralph's Grocery Store d/b/a Food 4 Less Midwest, is a corporation duly organized and existing under the Laws of the State of Ohio, maintaining a place of business at 1701 N Larkin Avenue, Crest Hill, Illinois.

8. At all times relevant hereto, the Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the Defendant.

9. At all times material herein, the Defendant is and has been a "person" and "employer" as defined under the ADA, Title VII and the IHRA, and is accordingly subject to the provisions of each said act.

### IV. STATEMENT OF CLAIMS

10. Plaintiff's nation of origin was Puerto Rican.

11. Plaintiff was hired by the Defendant on or about September 2004, and worked for the Defendant until on or about November 9, 2020, the date of his unlawful termination.

12. During the course of his employment with the Defendant, Plaintiff held the position of District Trainer and since January 2020 worked in the Defendant's Crest Hill store as Dairy and Frozen Lead Clerk.

13. On or about March 14, 2020, Plaintiff was battered by a co-worker and sustained loss of consciousness and injuries to this head neck, back, and wrist. The co-worker was arrested and threatened the Plaintiff with further assault as he was being arrested.

14. Plaintiff suffered a fractured wrist, neck, and back injuries because of the battery and had to wear a brace for his wrist for much of 2020 for his day-today life.

15. On or about April 17, 2020, Plaintiff was placed on restricted work duty by his physician, which included wearing a wrist brace, working light duty, no lifting over 5 pounds, no use of his right upper extremity, no climbing, and no over the shoulder lifting.

16. On or about April 28, 2020, Plaintiff returned to work on the above-mentioned restricted work duties and was also prescribed occupational therapy to help heal.

17. Wile working with restrictions, Plaintiff would often drop products, because he was unable to lift the products with one hand and would have unfinished product loads from the prior day and would be mandated to complete another load the following day. Plaintiff was never afforded any assistance by his co-workers. Plaintiff was threatened with demotion and was recommended to push carts instead of performing his regular job duties.

18. On or about September 16, 2020, Jenny Johnston, the Store Leader for the Defendant, usurped the restricted work duties by assigning Plaintiff to work full duty without restrictions, even though Plaintiff had not been released to work full duty by his treating Doctor.

19. During the time period that the Plaintiff was working with restrictions, Jenny Johnston, the Store Leader for the Defendant, accused Plaintiff of falsifying the Doctors' orders.

894053

20. Plaintiff's supervisors would prohibit Plaintiff from wearing a hoodie in the cooler, despite him needing to wear the hoodie. While other employees were allowed to wear their hoodies, coats, and other warm gear.

21. During the time period that the Plaintiff was working with restrictions, the Defendant's Store Leader, Jenny Johnston, said to the Plaintiff that having a 5-pound lifting restrict was "unheard of" and mockingly told Plaintiff that he would "rather be home" instead of working.

22. During the time period that the Plaintiff was working with restrictions, the Defendant's Assistant Store Leader, Scott Spec, called the Plaintiff "easy money" and a "two-legged mule" on a regular basis.

23. During the time period that the Plaintiff was working with restrictions, Defendants would fail to place Plaintiff on the schedule, which compelled Plaintiff to call in and ask when he was required to report for work; Scott Spec and Jenny Johnston, stated that they forgot to place the Plaintiff on the work schedule.

24. Defendant's policy was that employee was required to submit time requests off by a certain deadline. Despite the fact that Plaintiff needed to use his accrued time due to being in pain, he was prevented from doing so because he was not informed by Ms. Johnston or Mr. Spec that he was not on the schedule until it was too late to submit requests to use hie accrued time off.

25. Plaintiff's employee ID number was changed and no longer allowed the Plaintiff to override the time machine when he was tardy, so Plaintiff was prevented from ending his shift when Plaintiff's shift was supposed to end, while no other employees ID numbers were changed.

26. On or about September 2020, Plaintiff was locked in the cooler by Jenny Johnston and Scott Spec for 10 minutes.

27. On or about October 17, 2020, Plaintiff was called into the cooler by Jenny Johnston and Scott Spec., at which time Plaintiff was mocked by his co-workers, who accused Plaintiff of not doing his job correctly, and said Plaintiff was released to work without restrictions. Defendants' employees than locked Plaintiff in the cooler again for a time span of 10 to 15 minutes. After the detention, Plaintiff left work early because the detention caused injury to the Plaintiff and Plaintiff could no longer do his job adequately because of his distressed emotional state.

28. While Plaintiff was locked in the cooler, Defendants' employees ridiculed the Plaintiff by calling him the "Unabomber", "two-legged mule", and "easy money".

29. 34. On or about that same date, Plaintiff had to walk past customers and co-workers after he was released from the cooler in tears, shaking, and in an emotional state which induced a great feeling of embarrassment and shame. Plaintiff was unable to look at any of his co-workers or customers in the eye, so Plaintiff informed his co-workers that he had to leave early, because Plaintiff was not feeling well.

30. On or about that same date, Plaintiff received a text message from Jenny Johnston saying that "Danny [you]u did not ask to go home, nor would I have said yes, it is considered job abandonment I need [you]u back at the store to finish the dairy load." The message also stated "I'm saying [you]u need come back and finish Ur dairy load today I do not approve sick time or for [you]u to leave veronica is not manager on duty she cannot authorize [you]u to go home."

31. Plaintiff was never assigned any assistance to unload and stock the dairy loads that Plaintiff was assigned to stock, while other employees would be given assistance.

894053

32.     On or about October 27, 2020, Plaintiff was told by Jenny Johnston that Plaintiff would be demoted and his pay cut if, Plaintiff did not perform his job. Despite this, Plaintiff had not been released to work without restrictions and was still prescribed restricted work duty.

33.     On or about November 9, 2020, Plaintiff was involved in another altercation with Jenny Johnston and Scott Spec in the dairy cooler. During said altercation, Plaintiff Acevedo amicably asked for assistance to unload a large pallet of products. Jenny Johnston and Scott Spec responding by berating Plaintiff Acevedo for being unable to handle unloading the large pallet of products, despite Plaintiff Acevedo's restricted work duties. Plaintiff Acevedo responded by telling Jenny Johnston and Scott Spec that the assignment was physically overwhelming and against his doctor's orders. Jenny Johnston responded by verbally attacking Plaintiff by yelling various offensive remarks and obscenities, including but not limited to, "Unabomber" and told Plaintiff that he was not allowed to wear a sweatshirt or warm clothing while at work in the cooler, despite the cold temperature in the cooler exacerbating Plaintiff's work -related neck, back, and wrist injuries. Jenny Johnston mandated Plaintiff Acevedo to finish the job without following the restricted job duties despite that Plaintiff had not been released to return to work without restrictions.

34.     Other employees, who were not of Puerto Rican origin, were commonly afforded assistance with unloading and stocking large pallet shipments of product.

35.     Defendant's employees continued to place Plaintiff on heavy work duty with 8 pallets of merchandise to move and stock, and demanded that Plaintiff finish stocking all 8 pallets of product by the end of Plaintiff's work shift despite the Plaintiff having physical limitations and being on restricted duty.

894053

36. Plaintiff attempted to complete every task Defendant demanded of him; however, Plaintiff was unable to finish the tasks because of his work-related injuries and physical limitations and the harsh treatment from his co-workers.

37. Defendant treated other non-disabled and non-Puerto Rican employees in an equitable way when compared to the treatment received by Plaintiff, in that other employees were often given work assistance where needed while Plaintiff was never afforded the same or similar treatment.

38. Defendant created a hostile, discriminatory, and unlawful work environment based on Plaintiff's Puerto Rican national origin, actual and/or perceived disability and/or record of impairment, and treated other non-Puerto Rican employees and non-disabled employees more favorably in the terms and conditions of their employment.

39. Defendant created a hostile, discriminatory, and unlawful work environment based on Plaintiff having sought reasonable accommodation for his disabilities. Specifically, during the time period from April 28, 2020 through the end of 2020, when Plaintiff was working under physical restrictions, Plaintiff requested reasonable accommodations from the Defendant, including assistance from other employees in unloading products, but the Defendant refused.

40. On or about January 2022, Plaintiff Acevedo was abruptly terminated by the Defendants. No reason was given for said termination, but Plaintiff believes the termination was pretextual and that his employment was terminated based on his Puerto Rican national origin, his actual and/or perceived disability and/or record of impairment, and in retaliation for opposing unlawful discrimination in the workplace and requesting reasonable accommodations for his disability.

894053

**COUNT I**
**(Title VII-NATIONAL ORIGIN DESCRIMINATION, HOSTILE WORK ENVIROMENT)**

41. Plaintiff incorporates by reference paragraphs 1 through 40 as though fully set forth at length herein.

42. Defendant subjected Plaintiff to a hostile working environment and discrimination based upon his national origin as detailed above.

43. The hostile work environment was severe and pervasive based on the nature of the harassment, including egregious statements made by numerous employees expressing animosity towards Plaintiff's national origin, the constant-unwavering harassment, and derogatory comments towards Plaintiff based on his Puerto Rican national origin, and Defendant's blatant antagonistic comments of Plaintiff being a "two-legged mule", "easy money", and the "Unabomber", because of his national origin.

44. Plaintiff considered the aforementioned conduct to be discriminatory because other employees who were not of Puerto Rican national origin, were never locked into a freezer on 2 separate occasions. The other non-Puerto Rican employees were permitted to wear hoodies, coats, sweaters, and other cold temperature gear while working in the freezer, while Plaintiff was instead subjected to pervasive ridicule and insults regarding his national origin.

45. Defendant's supervisory employees observed Plaintiff Acevedo crying multiple times regarding his injuries and the treatment he was undergoing, so Defendant were fully aware of the hostile work environment; however, despite Plaintiff's actions, Defendants failed to investigate or otherwise cause the discriminatory conduct to cease.

46. Accordingly, Defendant's discriminatory acts have deprived Plaintiff of equal employment opportunities because of his national origin in violation of Title VII.

47. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff sustained permanent and irreparable harm, resulting in the loss of his employment, which caused him to sustain a loss of earnings, plus the value of certain benefits plus loss of future earning power, plus back pay, and interest due thereon.

48. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendants in violation of Title VII, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II
### (TITLE VII-Retaliation)

49. Plaintiff incorporates by reference paragraphs 1 through 48 as though fully set forth at length herein.

50. The actions of the Defendant through its agents, servants, and employees in subjecting Plaintiff to retaliation for opposing unlawful discrimination in the workplace constituted a violation of Title VII.

51. Defendant terminated Plaintiff's employment in retaliation for registering numerous complaints of discrimination in the workplace.

52. The reason articulated for Plaintiff's termination is pretextual, and his employment was terminated in retaliation for opposing unlawful discrimination in the workplace.

53. As a direct result of the aforesaid unlawful retaliatory practices engaged in by the Defendants in violation of Title VII, Plaintiff sustained permanent and irreparable harm, resulting in the loss of his employment which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

54. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT III
### (IHRA- National Origin Discrimination, Hostile Work Environment)

55. Plaintiff Acevedo incorporates by reference paragraphs 1 through 54 as though fully set forth at length herein.

56. The Defendants subjected Plaintiff to a hostile work environment and national origin discrimination based on Plaintiff being Puerto Rican, as detailed above.

57. The hostile work environment was severe and pervasive based on the nature of the harassment, including egregious statements made by numerous employees expressing animosity towards Plaintiff's Puerto Rican national origin, the constant-unwavering harassment and derogatory comments towards Plaintiff based on his national origin, and the Defendant's blatant denial to provide reasonable accommodation to Plaintiff in accomplishing his workload because of his national origin.

58. Plaintiff considered the aforementioned conduct to be discriminatory, because other employees, who were not of Puerto Rican national origin, were being treated in a more reasonable and equitable manner by Defendant's management providing them assistance but not the Plaintiff.

59. Plaintiff considered the aforementioned conduct to be discriminatory, because other employees who were not of Puerto Rican national origin were never locked into a freezer on repeated occasions. The other non-Puerto Rican employees were also permitted to wear hoodies, coats, sweaters, and other cold temperature gear while working in the freezer, while Plaintiff was instead subjected to pervasive ridicule and insults regarding his national origin.

10

894053

60. Plaintiff reported the hostile work environment to Defendant, but Defendant failed to conduct an investigation or otherwise cause the discriminatory conduct to cease.

61. Instead of causing the discriminatory conduct to cease, Defendant terminated Plaintiff Acevedo's employment. Defendant's reason for terminating Plaintiff's employment is pretextual, and his employment was terminated because of his national origin.

62. Accordingly, Defendant's discriminatory acts have deprived Plaintiff of equal employment opportunities, because of his national origin in violation of the IHRA.

63. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the IHRA, Plaintiff sustained permanent and irreparable harm, resulting in the loss of his employment which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

64. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the IHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT IV
## (IHRA-Retaliation)

65. Plaintiff incorporates by reference paragraphs 1 through 64 as though fully set forth at length herein.

66. The actions of the Defendant, through its agents, servants, and employees in subjecting Plaintiff to retaliation for opposing unlawful discrimination in the workplace constituted a violation of the IHRA.

67. Defendant terminated Plaintiff's employment in retaliation for registering his complaints of discrimination in the workplace.

894053

68. The reason articulated for Plaintiff's termination is pretextual, and his employment was terminated in retaliation for opposing unlawful discrimination in the workplace.

69. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the IHRA, Plaintiff sustained permanent and irreparable harm, resulting in the loss of his employment which caused him to sustain a loss of earnings, plus the value of certain benefits plus loss of future earning power, plus back pay, and front pay and interest due thereon.

70. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the IHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT V
### (ADA-Disability Discrimination, Failure to Accommodate)

71. Plaintiff incorporates by reference paragraphs 1 through 70 as though fully set forth at length herein.

72. The actions of the Defendant, through its agents, servants, and employees in subjecting Plaintiff to discrimination and a hostile work environment on the basis of his actual and/or perceived disabilities and/or record of impairment for his disability, constituted violations of the ADA.

73. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of ADA, Plaintiff sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

74. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT VI
### (ADA-Retaliation)

75. Plaintiff incorporates by reference paragraphs 1 through 74 of his complaint as though fully set forth herein.

76. The actions of the Defendant, through its agents, servants, and employees in retaliating against Plaintiff for requesting a reasonable accommodation of his disability, and for opposing unlawful disability discrimination in the workplace, constituted a violation of the ADA.

77. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of ADA, Plaintiff sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

78. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT VII
### (IHRA- Disability Discrimination, Failure to Accommodate)

79. Plaintiff incorporates by reference paragraphs 1 though 78 of his complaint as though fully set forth herein.

80. The actions of the Defendant through its agents, servants, and employees in discriminating against Plaintiff on the basis of his actual and/or perceived disabilities and/or

894053

record of impairment, and failing to provide reasonable accommodation for his disabilities, constituted a violation of the IHRA.

81. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the IHRA, Plaintiff sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

82. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the IHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT VIII
## (False Imprisonment)

83. Plaintiff incorporates by reference paragraphs 1 through 82 of his complaint as though fully set forth herein.

84. On or about September 2020, October 17, 2020, and on November 9, 2020, Defendant through its agents forced Plaintiff to enter into the dairy cooler with no reasonable means of escape and against Plaintiff's wishes.

85. On or about said dates and place, Defendant knew that the above-mentioned acts constituted false imprisonment and still continued it.

86. That on the aforementioned dates and place, the conduct of the Defendant was willful, wanton, malicious, and with conscious disregard of Plaintiff's rights and feelings.

87. That on the aforementioned dates and places, the Defendant, through its employees and agents, falsely imprisoned the Plaintiff by committing the following acts or omissions:

      a.      Forced Plaintiff into the cooler;

      b.      Imposed restrictions on personal movement of the Plaintiff while he was in the cooler.

      c.      Wrongfully detained Plaintiff without legal authority; and

      d.      Afforded Plaintiff no reasonable means of egress from the cooler.

88.      That as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental, emotional distress, anxiety, economic harm, and other consequential damages flowing from the Defendant's conduct.

## COUNT IX
### (Intentional Infliction of Emotional Distress)

89.      Plaintiff incorporates by reference paragraphs 1 through 88 of his complaint as though fully set forth herein.

90.      The actions of the Defendant, through its agents, servants, and employees inflicted emotional distress on the Plaintiff.

91.      That the aforementioned acts of the Defendant's intentional infliction of emotional distress were extreme and outrageous going beyond the ordinary bounds of any human could endure.

92.      That the Defendants' acted with reckless disregard to the safety, rights, and emotions of the Plaintiff.

93.      That on the aforementioned dates and place, the conduct of the Defendant was willful, wanton, malicious, and with conscious disregard of Plaintiff's rights and feelings

94.      That as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental, and

894053

emotional distress, anxiety, economic harm, and other consequential damages flowing from the Defendant's conduct.

## PRAYER FOR RELIEF

95. Plaintiff incorporates by reference paragraphs 1 through 94 of his complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff Danny Acevedo requests that this Court enter a judgment in his favor and against the Defendant, and order that:

a. Defendant compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination;

b. Defendant compensate Plaintiff with an award of front pay, if appropriate;

c. Defendant pay to Plaintiff punitive damages, compensatory damages, for future pecuniary loss, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

d. Defendant pay Plaintiff pre and post judgment interest, costs of suit, attorney, and expert witness fees as allowed by law; and

e. The Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

KGG, LLC

By: /s/ Paul J. Richards
Paul J. Richards, ARDC No.: 06230122
KGG, LLC
111 North Ottawa Street
Joliet, Illinois 60432
(815) 727-4511
prichards@kgpllc.com
Attorney for Plaintiff

16

894053

## **VERIFICATION**

I hereby verify the statements contained in the Complaint are true and correct to the best of my knowledge, information, and belief.

_____
Danny Acevedo, Plaintiff

DATE: 6/8/22

894053