UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANNY ACEVEDO,

  Plaintiff,

 v.

RALPH'S GROCERY COMPANY, D/B/A
FOOD 4 LESS MIDWEST,

  Defendant.

No. 22 CV 3097

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

  Plaintiff Danny Acevedo worked for over a decade at grocery store Food 4 Less Midwest. A coworker severely assaulted him, and his physician told him he had to be placed on restricted work duty. His superiors didn't take well to this and instead (based on the facts Acevedo presents in his complaint) insulted and harassed him. Acevedo says he was abruptly fired because of his disability and national origin (he is Puerto Rican), in violation of the Americans with Disabilities Act, Title VII of the Civil Rights Act, and the Illinois Human Rights Act. He also brings claims of False Imprisonment and Intentional Infliction of Emotional Distress. Defendant moves to compel arbitration. The motion is granted and the case is stayed pending arbitration.

I. **Legal Standard**

  A motion to compel arbitration should be granted when there is "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Druco Restaurants, Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014) (citation

omitted). When the parties disagree about the existence of an arbitration agreement, the summary judgment standard supplies the standard of review. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute." *Id.* "In deciding whether the party opposing summary judgment (and by analogy compelled arbitration) has identified a genuine issue of material fact," I draw all justifiable inferences in favor of the party opposing summary judgment. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). If a non-movant identifies a material factual dispute about whether the parties agreed to arbitrate, the non-movant is entitled to a jury trial on that issue. 9 U.S.C. § 4 ("If the making of the arbitration agreement…be in issue, the court shall proceed summarily to the trial thereof."); *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 751 (7th Cir. 2017).

## II.   Facts

Danny Acevedo was hired by defendant Ralph's Grocery Company, d/b/a Food 4 Less Midwest, in September 2004. [1] ¶ 11.[1] When he was hired, he signed a document acknowledging that he had received and agreed to a "Mediation & Binding Arbitration Policy." [5-1] at 5. In 2012, defendant updated its arbitration policy. [5-1].[2] From the day he started until January 2020, he worked as District Trainer. [1]

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's complaint, [1], and defendant's exhibits, [5-1], [9-1].

[2] The parties dispute whether Acevedo received that updated policy and accepted its terms. I address that disagreement below.

¶ 12. From January 2020 until he was fired, he worked in defendants' Crest Hill store as Dairy and Frozen Lead Clerk. [1] ¶ 12.

In March 2020, a co-worker assaulted Acevedo, injuring his head, neck, back, and wrist, and rendering him unconscious. [1] ¶ 13. The co-worker was arrested, [1] ¶ 13, and Acevedo took a month and a half away from work to recover. *See* [1] ¶ 16.

Acevedo's physician told him he needed to be on restricted work duty. [1] ¶ 15. Specifically, the doctor told Acevedo to work light duty, wear a wrist brace, not lift more than five pounds, not use his right upper extremity, not climb, and not lift items over his shoulder. [1] ¶ 15. Even with restrictions, Acevedo struggled. [1] ¶ 17. Unable to lift products with one hand, he dropped products. [1] ¶ 17. He couldn't finish a day's worth of loading in one day, so he'd have unfinished product loads from the day before, in addition to a new day's worth. [1] ¶ 17. He was never given assistance with unloading and stocking the loads, even though other, non-Puerto Rican employees were. [1] ¶¶ 31, 34, 37.

Once, when the store leader had impermissibly transitioned him back to full work duty, he asked for help unloading a large pallet. [1] ¶ 33. The store leader and assistant store leader berated him. [1] ¶ 33. He told them the assignment was physically overwhelming and against his doctor's orders. [1] ¶ 33. The store leader responded by yelling obscenities and offensive comments at him. [1] ¶ 33. She called him a "Unabomber," and told him he couldn't wear warm clothing in the cooler. [1] ¶ 33. She then forced him to finish the full-duty job. [1] ¶ 33.

He was threatened with demotion and told he should push carts instead of performing his regular job duties. [1] ¶ 17. His supervisors continued to prohibit him from wearing a hoodie, even though he worked in the coolers, and other employees were allowed to wear hoodies, coats, and other warm gear. [1] ¶ 20. The store leader accused him of falsifying his doctor's orders. [1] ¶ 19. She told him that having a five-pound lifting restriction was "unheard of," and that he'd "rather be home" than working. [1] ¶ 21. The assistant store leader called him "easy money" and a "two-legged mule" on a regular basis. [1] ¶ 22. His supervisors stopped placing him on the schedule, forcing him to call in to ask when he was supposed to report for work. [1] ¶ 23. Employees had to request time off by a certain deadline in advance of their shifts. [1] ¶ 24. But Acevedo was continually informed of his schedule too late to meet the deadline. [1] ¶ 24. His ID number was changed, which prevented him from overriding the time machine when he was late. [1] ¶ 25. That, in turn, prevented him from leaving when his shift was supposed to end. [1] ¶ 25. No other employees' ID numbers were changed.

In September, things escalated even more. The store leader and assistant store leader locked Acevedo in the cooler for ten minutes. [1] ¶ 26. They did it again a month later. [1] ¶ 27. This time, they called him into the cooler, mocked him, accused him of doing his job incorrectly, and said he was released to work without restrictions (he was not). [1] ¶ 27. While Acevedo was locked in the cooler for ten to fifteen minutes, the store leaders ridiculed him, calling him the "Unabomber," "two-legged mule," and "easy money." [1] ¶ 28.

4

When he was released from the cooler, he was crying and shaking. [1] ¶ 29. Embarrassed and ashamed, he walked past customers and co-workers, unable to look them in the eye. [1] ¶ 29. He told his co-workers he wasn't feeling well and had to leave early. [1] ¶ 29. But the store leader wasn't happy with him leaving. She texted him: "Danny u did not ask to go home, nor would I have said yes, it is considered job abandonment I need u back at the store to finish the dairy load," and "I'm saying u need come back [sic] and finish Ur dairy load today I do not approve sick time or for u to leave veronica is not manager on duty she cannot authorize u to go home." [1] ¶ 30.

Roughly ten days after that incident, the store leader told him he'd be demoted and his pay would be cut if he didn't perform his job. [1] ¶ 32. He was still on restricted work duty at that time. [1] ¶ 32. Nevertheless, he continued to be placed on heavy work duty and given eight pallets to move and stock every day. [1] ¶ 35. Defendant terminated Acevedo without giving a reason. [1] ¶ 40.[3]

Acevedo brings a hostile-work-environment Title VII claim, alleging that defendant discriminated against him on the basis of national origin. [1] ¶¶ 41–48. He also alleges that defendant retaliated against him for complaining about discrimination in the workplace. [1] ¶¶ 49–54. He brings similar claims under the Illinois Human Rights Act (IHRA). [1] ¶¶ 55–70. He brings failure-to-accommodate claims under the Americans with Disabilities Act (ADA) and the IHRA, as well as a

---

[3] The complaint alleges that defendant fired Acevedo in November 2020, [1] ¶ 11, and January 2022, [1] ¶ 40. The date of termination is immaterial to the question of whether the parties agreed to arbitration.

retaliation claim under the ADA. [1] ¶¶ 71–82. He alleges defendant falsely imprisoned him by locking him in the cooler, [1] ¶¶ 83–88, and that all the alleged conduct taken together constitutes Intentional Infliction of Emotional Distress. [1] ¶¶ 89–94. Defendant says plaintiff must arbitrate his claims. [6], [9].

### III. Analysis

#### A. The 2004 Arbitration Agreement

When he began working at Food 4 Less in 2004, Acevedo signed a document acknowledging that he had received a copy of defendant's arbitration agreement and agreed to it. [5-1] at 5–6. Neither party disputes that he signed this acknowledgement. In its motion to compel, defendant never explicitly says that the 2004 acknowledgement bound Acevedo to arbitrate. That's the clear implication, though—unless Acevedo agreed to arbitrate in 2004, he can't be bound by the 2012 updates to arbitration simply by continuing to work at Food 4 Less. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) ("[C]ourts cannot require a party to submit a dispute to arbitration unless he has agreed to do so."). In his response brief, Acevedo notes that defendant didn't produce a copy of the 2004 policy, so it had not shown what policy Acevedo consented to. [8] at 1–4. But defendant later submitted a copy of the 2004 policy with its reply brief. [9-1] at 5–8.[4] The 2004 agreement provides, [9-1] at 5:

> Except for Excluded Disputes, this Arbitration Policy applies to any and all other employment-related disputes that exist or arise between Employees and [Employer] that would constitute cognizable claims or causes of action in a

---

[4] Plaintiff did not request leave to file a surreply in response to the additional exhibits defendant attached to its reply brief.

6

federal, state, or local court or agency under applicable federal, state, or local laws (referred to in this Arbitration Policy as "Covered Disputes").

With the text of the agreement in hand, there's no question that the "Mediation & Binding Arbitration Policy" that the acknowledgment document references is, in fact, an agreement to arbitrate. By signing that acknowledgement, Acevedo agreed to arbitrate.

### B. The 2012 Arbitration Agreement

In 2012, defendant updated its arbitration policy. [5-1] at 8–10. Defendant says it notified employees of the 2012 policy by mail, but plaintiff says there is no evidence that he received the mail defendant allegedly sent him. [8] at 4, 6. No receipt, no contract formation, he argues. [8] at 4. But store employee Annabelle Capulong said in a sworn declaration that, on June 20, 2012, plaintiff received notice of the updated policy. [5-1] at 3. Plaintiff offers no contrary evidence, and what's more, KrogerCo. employee Maya Rosen stated in a sworn declaration that "[a]ll salaried associates and non-union employees were mailed an individualized notice and two copies of the 2012 Dispute Resolution Agreement to the personal address on the employees' personnel file." [9-1] at 3.

"Evidence of proper mailing raises a rebuttable presumption of delivery," *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476 (7th Cir. 2009); *see also Vincent v. City Colls. of Chi.*, 485 F.3d 919, 922 (7th Cir. 2007) ("Evidence of mailing is evidence of delivery."). Defendant has come forward with proof that it sent the 2012 policy to the address listed in official personnel records, so the burden shifts to plaintiff to show that those facts—or any other facts relevant to his receipt of the

7

policy—are in dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiff has presented nothing to rebut defendant's proof, so I conclude that plaintiff received the 2012 policy.

Still, plaintiff says no valid contract was formed. Specifically, he objects to what he believes are unclear and ambiguous terms, the lack of an opt-out provision, and the fact that his silence was construed as acceptance. [8] at 4–7. Together, these circumstances amounted to procedural unconscionability, in his view. [8] at 6–7.

State law governs contract-formation issues, and the Illinois Supreme Court has said that "general contract doctrine[]" governs contract formation under the Federal Arbitration Act (FAA). *Gupta*, 934 F.3d at 711 (citing *Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 150 (2006)).

Arbitration agreements don't need opt-out provisions to be valid. *See Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 905–06 (7th Cir. 2004); *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 490–91 (7th Cir. 2004); *Scaffidi v. Fiserv, Inc.*, 218 Fed. App'x 519, 521 (7th Cir. 2007). Plaintiff cites to *Gupta v. Morgan Stanley* to argue that, when an employer takes silence as assent to a contract, it must provide the employee an opportunity to opt out. *See* [8] at 5. *Gupta* doesn't stand for that proposition. The *Gupta* court merely noted that it was reasonable for Morgan Stanley to construe plaintiff's silence as assent, given a number of factors. 934 F.3d at 713. One of those factors was that plaintiff had the opportunity to opt out by a deadline. *Id*. That doesn't mean that it's *unreasonable* to construe silence as assent when an arbitration agreement contains no opt-out provision. "Take-it-or-leave-it" contracts are valid

8

under Illinois law, *Melena*, 219 Ill.2d at 152, so "arbitration provisions in [those] contracts must be enforced." *Oblix, Inc.*, 374 F.3d at 491.

Plaintiff next argues that, because the terms of acceptance were unclear and ambiguous, defendant wasn't entitled to construe his silence as assent. [8] at 5. The letter, to which two copies of the agreement were attached, provided, [5-1] at 8:

> Please review the attached Dispute Resolution Agreement, complete and sign on page two, where indicated. Return a signed Dispute Resolution Agreement to the Personnel Department no later than July 6, 2012, and keep a copy for your own records. Signed forms may be faxed [number], scanned and e-mailed [email address], sent inter-company mail or U.S. Mail [sic].
>
> Note, however, that you are bound by the terms of the Dispute Resolution Agreement even if you fail or refuse to sign and return one of the attached copies. By its terms, the Dispute Resolution Agreement will bind both you and the Company 30 days after you receive it.

The agreement, in turn, stated, "This Agreement shall be binding on the Company and Employee 30 days after Employee's receipt." [5-1] at 10.

Acevedo says that, because the letter told him to sign and return the policy, but then "unilaterally stated" that he was bound by the policy regardless, "[i]t was reasonable for Plaintiff to have presumed that his failure to sign the 2012 [agreement] by the stated deadline constituted a refusal of its terms." [8] at 5. But the policy's language was clear. It offered employees two ways to accept: signing and returning the policy or not doing anything for 30 days. The way to reject the contract was for an employee to withdraw the consideration for the bargain: their services. *See Melena*, 219 Ill.2d at 152 ("[C]ontinued employment is sufficient consideration for the enforcement of employment agreements.").

9

Finally, defendant was entitled to construe plaintiff's silence as assent. *See Bauer v. Qwest Comms Co., LLC*, 743 F.3d 221, 227–28 (7th Cir. 2014) (citing *First Nat'l Bank of Chi. v. Atl. Tele-Network Co.*, 946 F.2d 516, 519 (7th Cir. 1991) and Restatement (Second) of Contracts § 69 cmt. a). Plaintiff and defendant had "previous dealings" with each other, *id.* at 228, including plaintiff's assent to a prior arbitration agreement (the 2004 one). Plaintiff's silence therefore bound him to the 2012 policy.

## IV. Conclusion

Defendant's motion to compel arbitration, [5], is granted. Plaintiff must submit his claims to arbitration, and this case is stayed. The parties shall file a status report on the progress of arbitration on 3/17/2023.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: February 7, 2023